**Jessica KINZEL**

v.

**SOUTHVIEW CHEVROLET CO. et al.**

No. 4–94–CV–529.

United States District Court,
D. Minnesota,
Fourth Division.

July 18, 1995.

Ronald Sidney Goldser, Zimmerman & Reed, Minneapolis, MN, Thomas J. Lyons, Lyons Sawicki Neese & Phelps, St. Paul, MN, Richard Gregory Nadler, Nadler Law Office, St. Paul, MN, for Jessica Kinzel.

Donna Dunkelberger Geck, Arthur Chapman McDonough Kettering & Smetak, Minneapolis, MN, Gregory John Johnson, Kieffer & Johnson, St. Paul, MN, for Southview Chevrolet Co.

Janel Elaine Pozarnsky Laboda, Richard Gary Mark, Briggs & Morgan, Minneapolis, MN, for Eastern Heights State Bank of St. Paul.

Thomas E. Harms, Susan Rester Miles, Hessian McKasy Soderberg, Minneapolis, MN, for Security Pacific Financial Services, Inc.

Marko Joseph Mrkonich, Edward Michael Laine, Nicholas W. Koster, Oppenheimer Wolff & Donnelly, St. Paul, MN, for Commercial Credit Consumer Services, Inc.

## ORDER

ROSENBAUM, District Judge.

According to the Complaint, the plaintiff, Jessica Kinzel, wished to purchase a used car. She lacked the money for the purchase or a down payment. As a result of these otherwise unremarkable facts, the plaintiff asserts her qualification to represent a presently uncertified class of individuals who financed used cars using the defendants' services.

The defendants move for judgment on the pleadings or, alternatively, for summary judgment, pursuant to Rules 12(c) and 56(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). The Court has considered affidavits and exhibits submitted by the parties and converts the motions to ones for summary judgment. *See* Fed.R.Civ.P. 12(c). For the reasons stated below, the defendants' motions are granted.

I. *Parties and Jurisdiction*

Plaintiff, Jessica Kinzel, a Minnesota resident, purchased a used automobile from defendant Southview Chevrolet Co. in May, 1993. Defendant Southview Chevrolet Co. ("Southview Chevrolet") is a Minnesota corporation. Defendant Eastern Heights State Bank of St. Paul ("Eastern Heights") is a Minnesota state-chartered bank. Defendant Security Pacific Financial Services, Inc. ("Security Pacific"), is a Delaware corporation. Defendant Commercial Credit Consumer Services, Inc. ("Commercial Credit"), is a Minnesota corporation. Each defendant does business in the state of Minnesota.

Ms. Kinzel commenced this action on May 19, 1994, in the Dakota County District

Court. The defendants timely removed the action to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446. Defendants claim that federal question jurisdiction exists, pursuant to 28 U.S.C. § 1331. Defendants claim that the Complaint asserts a common claim for violation of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and Regulation Z, 12 C.F.R. 226, *et seq.*[1]

In July, 1994, plaintiff moved to remand the matter to state court, arguing that this Court did not have original jurisdiction over some of plaintiff's claims, and that issues of state law predominated over those based on federal law. By Order, dated September 21, 1994, this Court adopted the August 23, 1994, Report and Recommendation of the Honorable Franklin L. Noel, United States Magistrate Judge, that remand be denied. The Court finds that federal question subject matter jurisdiction is present.

## II. *Background*

The underlying facts are mundane; the asserted wrongs are many. Plaintiff claims she wanted to trade in her 1985 Dodge Charger and purchase another used automobile. Unfortunately, the Dodge Charger had negative equity—its trade-in value was approximately $400.00, and it was encumbered by auto loans exceeding $1,750.00. This situation, obviously, complicated the plaintiff's plan. The consequence of these complications are the gravamen of this case.

When plaintiff went to Southview Chevrolet, she provided information concerning her financing needs. Southview Chevrolet conveyed the information, by facsimile, to Security Pacific. Thereafter, Ms. Kinzel obtained an unsecured loan from Security Pacific.

With the proceeds of the Security Pacific loan in hand, plaintiff purchased a used car from Southview Chevrolet under a written retail installment contract which required a $1,520.00 down payment. The parties agree that dual sources of funds were used for the down payment. Plaintiff used the $1,500.00 loan from Security Pacific and added an additional $20.00 from her own funds. The plaintiff has not paid the sums due on the loan, nor has she returned the purchased vehicle, as it was destroyed in an accident approximately three weeks after its purchase.

Both Security Pacific and Southview Chevrolet gave the plaintiff loan disclosure documents concerning the respective transactions with each individual business.[2] Neither Security Pacific nor Southview Chevrolet gave her a consolidated statement reflecting both the Security Pacific loan and the Southview Chevrolet purchase.

Plaintiff alleges that Southview Chevrolet's disclosures in its retail installment contract did not reflect the Security Pacific loan, violating TILA, Regulation Z, and the Minnesota Motor Vehicle Retail Installment Sales Act, Minn.Stat. § 168.66, *et seq.* ("MVRISA"). Plaintiff argues that the $1,500.00 loan from Security Pacific is an "amount financed" by the seller of the automobile. *See* Complaint, ¶¶ 27 and 31. Plaintiff asserts that on these facts, Security Pacific is, *de facto,* an unlicensed sales finance company which charged a usurious interest rate, in violation of Minn.Stat. § 168.72, subd. 1(a). *See* Complaint, ¶¶ 37–40.

The other two defendants are a further step removed. Eastern Heights is the assignee of Ms. Kinzel's and Southview Chevrolet's retail installment contract. From this fact, plaintiff argues that Eastern Heights is responsible for statutory violations, pursuant to a Federal Trade Commission ("FTC") regulation set forth at 16 C.F.R. 433 and Minn. Stat. § 325G.16. *See* Complaint, ¶¶ 35 and 36. Similarly, defendant Commercial Credit purchased Ms. Kinzel's $1,500.00 unsecured promissory note with Security Pacific. Plaintiff argues that Commercial Credit, as the assignee of the unsecured note, is liable for statutory violations allegedly committed by Security Pacific.

The Complaint asserts five counts. Counts I and II allege that all defendants are liable for MVRISA and TILA violations for

---

**1.** Regulation Z is the regulation issued by the Board of Governors of the Federal Reserve System to implement TILA. *See* 12 C.F.R. § 226.1 *et seq.* (1994).

**2.** All parties acknowledge that, if the transactions are considered separately, the Southview Chevrolet and Security Pacific disclosure statements comply with the law.

failing to include the $1,500.00 Security Pacific loan in the retail installment contract disclosure statements. In Count III, plaintiff claims Eastern Heights, as assignee, is liable as a holder-in-due-course, pursuant to 16 C.F.R. 433. This, she claims, subjects Eastern Heights to all claims asserted against Southview Chevrolet. Count IV suggests that Security Pacific made the unsecured loan while acting as an unlicensed sales finance company, in violation of the MVRISA, and charged a usurious interest rate, in violation of Minn.Stat. § 168.72, subd. 1(a). Further, plaintiff claims that Commercial Credit, as assignee of the unsecured loan, is liable to the same extent as Security Pacific. In Count V, plaintiff restates Counts I—IV and asserts a right to represent a class of persons similarly situated.

### III. *Motion for Summary Judgment*

■ The defendants deny any wrongdoing and seek summary judgment, pursuant to Fed.R.Civ.P. 56(c). Summary judgment is appropriate if there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* Fed.R.Civ. Pro. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

The material facts are not in dispute, and the issues are considered as a matter of law. The Court considers the facts alleged in the non-moving party's pleadings and affidavits as true and has resolved all factual disputes in favor of the plaintiff. *Radaszewski v. Telecom Corp.,* 981 F.2d 305, 310 (8th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 248 (1993).

### IV. *TILA and MVRISA Claims*

In Counts I and II, plaintiff claims defendants violated TILA and the MVRISA. In response, Southview Chevrolet argues that the disclosures in the retail installment contract given to Ms. Kinzel comply with federal and state law. Southview Chevrolet denies

that it is required to disclose the terms of Security Pacific's unsecured $1,500.00 loan, since this loan was made by a third-party. The other defendants deny they are TILA "creditors," and claim they are not susceptible to TILA and MVRISA claims. The Court first considers the TILA claims asserted in Count II.

#### A. *Truth-in-Lending Act*

■ The TILA compels creditor-disclosure of certain information in a "consumer credit transaction." *See* 15 U.S.C. § 1638; 12 C.F.R. § 226.18. The cited sections require disclosure of a financing transaction's annual percentage rate, finance charge, amount financed, total payments, total sales price, and the number and amount of payments. *Id.*

■ Congress expressed its intentions in the TILA statute itself. TILA was enacted to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available ... and avoid the uninformed use of credit[.]" *See* 15 U.S.C. § 1601(a). A creditor which fails to comply with TILA's disclosure requirements is liable for statutory penalties. *See* 15 U.S.C. § 1640(a).

Prior to October, 1982, TILA defined a "creditor" as one:

> [W]ho regularly extend[s], or arrange[s] for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

*See* 15 U.S.C. § 1602(f) (1980) (repealed).[3] Using this definition, the courts determined that financial institutions which purchased consumer credit contracts from automobile dealers were "creditors" subject to TILA disclosure requirements. *See e.g. Ford Motor Credit Co. v. Cenance et al.,* 452 U.S. 155, 157–58, 101 S.Ct. 2239, 2240–41, 68 L.Ed.2d 744 (1981).

---

**3.** Similarly, prior to October, 1982, Regulation Z, 12 C.F.R. § 226.1 *et seq.,* defined a "creditor" to be one "who in the ordinary course of business regularly extends or arranges for the extension of consumer credit[.]" *See* 12 C.F.R. § 226.2(s) (1980) (repealed).

Congress, however, revised this definition, effective October 1, 1982, when it enacted the Truth-in-Lending Simplification and Reform Act. *See* Pub.L. No. 96–221. Subsequent to this enactment, during the time this case occurred, only the automobile dealership was the TILA "creditor" in dealer-originated credit sale transactions that are assigned to banks. *See* 15 U.S.C. § 1602(f) (1994); 12 C.F.R. § 226.2, Supp. I, Commentary 2(a)(17)(i)–2 at pp. 290–91 (1994). This change was emphasized when the Federal Reserve Board staff issued its official commentary to Regulation Z and revised the definition of creditor to "reflect[ ] the statutory amendments to the act that were intended to eliminate the problem of multiple creditors in a transaction." *See* 12 C.F.R. § 226.2, Commentary 2(a)(17)(i), Supp. I, at p. 296 (1994).

■ It is well-established that a Federal Reserve Board staff opinion construing the Truth-in-Lending Act or Regulation Z is dispositive absent a showing that the opinion is demonstrably irrational. *Ford Motor Credit Co. v. Milhollin et al.,* 444 U.S. 555, 565, 100 S.Ct. 790, 796–97, 63 L.Ed.2d 22 (1980); *First National Bank of Council Bluffs, Iowa v. Office of Comptroller of Currency,* 956 F.2d 1456, 1460 (8th Cir.1992). The Court finds this staff opinion to be rational, as it simply restates the congressional intent to eliminate an ambiguity in the statute prior to October, 1982.

Under the revised 1982 "creditor" definition, the Court finds that the only creditor in this transaction is Southview Chevrolet. Defendants Eastern Heights, Security Pacific, and Commercial Credit are not TILA creditors. As a result, they have no TILA liability. Accordingly, the Court grants the motions for summary judgment by defendants Eastern Heights, Security Pacific, and Commercial Credit on plaintiff's TILA claim in Count II.

■ Next, the Court considers Southview Chevrolet's claimed TILA liability. According to plaintiff, Southview Chevrolet was required to count the Security Pacific loan as an amount financed for acquisition of the automobile. The Court rejects this position.

TILA does not require that the terms of the second transaction—the unsecured loan by a third-party to finance a down payment—be incorporated into the retail installment contract. Here again, the Court relies on Official Staff Commentary to Regulation Z. The commentary provides that:

> The separate financing of a downpayment in a credit sale transaction may, but need not, be disclosed as 2 transactions (a credit sale and a separate transaction for the financing of the downpayment).

12 C.F.R. § 226.17, Supp. I, Commentary 17(c)(1)–16, p. 363 (1994).

As stated above, official staff opinions construing TILA or Regulation Z are dispositive absent a showing of demonstrable irrationality. *Milhollin,* 444 U.S. at 565, 100 S.Ct. at 796–97. Plaintiff has made no such showing. The disclosure statement Southview Chevrolet gave to the plaintiff fully complies with the TILA requirement. Plaintiff simply wishes that the law would compel a compound disclosure of the Southview Chevrolet and the Security Pacific transaction. Neither the law, nor this Court, requires that her wish be granted.

The Court concludes that TILA does not require a creditor to disclose to a consumer her own contracted obligation to repay an unsecured loan to a third-party. Southview Chevrolet's motion for summary judgment on Count II is granted. Having made the Count II TILA analysis, the Court turns to Count I's MVRISA claims.

**B.** *Motor Vehicle Retail Installment Sales Act*

■ The Minnesota legislature has defined the MVRISA's disclosure obligations in Minn.Stat. § 168.71(b). The statute explicitly provides that, as one method of compliance, a retail seller "may give the retail buyer disclosures which satisfy the requirements of the Federal Truth-in-Lending Act in effect as of the time of the contract[.]" *See* Minn.Stat. § 168.71(b). The Court has determined, above, that these disclosures satisfy TILA. Having made that determination, the very words of MVRISA compel the conclusion that Southview Chevrolet has satisfied its requirements.

■ The other defendants can be considered summarily. Under MVRISA, only a "retail seller" is obligated to make disclosures under Minn.Stat. § 168.71(b). Southview Chevrolet is the sole retail seller in this transaction. Southview Chevrolet and the plaintiff are the only parties to the retail installment contract; the other defendants are simply beyond the reach of the statute. To construe a bank which makes an unsecured loan or business entities which conduct regular transactions in commercial paper as retail sellers would contort the plain language of MVRISA. This the Court declines to do. Accordingly, the MVRISA claims against Security Pacific, Eastern Heights, and Commercial Credit fail. Summary judgment is granted in favor of the defendants on Count I.

## V. *Count III*

■ Plaintiff claims Eastern Heights is vicariously liable for TILA violations as an assignee of the Southview Chevrolet retail installment contract. This claim fails, as the Court has determined there were no TILA or Regulation Z violations here. Even assuming, *arguendo,* that such violations had occurred, Eastern Heights could not be liable on these facts. Only a "creditor," as defined by Congress, can be liable for a TILA violation. *See* 15 U.S.C. § 1640(a). In this case, Eastern Heights is merely an assignee of the retail installment contract; it is not a creditor.[4]

■ The Court rejects plaintiff's unsupported assertion in Count III that FTC holder-in-due-course regulations, set forth at 16 C.F.R. § 433, and Minn.Stat. § 325G.16, combine to make Eastern Heights liable for TILA violations. First, the Court has deter-

mined that there was no TILA violation. Second, Congress made its only provision for assignee liability in 15 U.S.C. § 1641(a). The Complaint makes no claim against Eastern Heights under the authorizing statute. The Complaint charges that Eastern Heights violated the holder-in-due-course regulation, but plaintiff has failed to present evidence or brief the issue. The Court determines that the FTC holder-in-due-course regulation and Minnesota statutes are simply inapplicable. The Court grants Eastern Heights' motion for summary judgment on Count III.

## VI. *Count IV*

■ In Count IV, plaintiff argues that Security Pacific was an unlicensed sales finance company, and therefore, has violated Minn.Stat. § 168.67(a) by making the $1,500.00 unsecured loan. *See* Complaint, ¶ 39. The Court rejects this argument based on the evidence produced by the parties.

Security Pacific has proffered unrebutted evidence that it was licensed by the State of Minnesota as a regulated lender and was authorized by the State to make consumer loans. *See* Affidavit of Terry R. Meyer, ¶ 3.[5] The Minnesota legislature has provided that licensed regulated lenders, such as Security Pacific, need not be licensed sales finance companies. *See* Minn.Stat. § 168.67(a). Security Pacific has demonstrated it was not subject to the licensure requirements set forth in Minn.Stat. § 168.67(a) because it is a regulated lender and not a sales finance company. Based on this unrebutted evidence, the Court determines there is no statutory violation, and the claim presents no triable issue. *See* Fed.R.Civ.P. 56(e).

---

**4.** Further, even if the Court were to find a disclosure violation and that Eastern Heights is a "creditor," TILA limits remedies available against assignees. A civil action for a TILA violation may be brought against a creditor and an assignee of the creditor only if the violation is apparent on the face of the disclosure statement in the retail installment contract. *See* 15 U.S.C. § 1641(a).

One federal district court has interpreted this statutory limitation on assignee liability as confirmation that, "Apparently Congress did not wish to impose liability for damages and attor-

ney's fees on an assignee who was not responsible for and who had no notice of TILA disclosure violations at the time of the assignment." *See Brodo v. Bankers Trust Co.,* 847 F.Supp. 353, 359 (E.D.Pa.1994).

**5.** Terry R. Meyer is employed by the Minnesota Department of Commerce as its Chief Examiner of the Financial Examinations Division. This agency is responsible for licensing regulated lenders and sales finance companies in the State of Minnesota. *See* Affidavit of Terry R. Meyer, p. 1, ¶¶ 1–2.

Plaintiff also claims that Security Pacific charged a usurious interest rate—21.75% on the unsecured $1,500 loan—in violation of Minn.Stat. § 168.72, subd. 1(a). *See* Complaint, ¶ 40. The statute, however, imposes interest rate limitations upon the "retail installment sale" of a motor vehicle. Such a sale must be evidenced by a "retail installment contract." *See* Minn.Stat. §§ 168.66, subd. 3 and 4. The statute does not regulate general unsecured transactions.[6]

Zealous advocacy and a blithe assertion of a wish as a fact cannot support a baseless claim. Security Pacific is not a party to the retail installment contract. The plaintiff may wish that Security Pacific is such a party, but there is no record support for the assertion, and the law does not imply the relationship. Southview Chevrolet alone entered into a retail installment contract with plaintiff and is subject to the interest rate limitations found in Minn.Stat. § 168.72, subd. 1(a). Security Pacific is not a party to the automobile purchase. The Court finds that the Minnesota statute does not apply. Accordingly, Security Pacific's motion for summary judgment on Count IV is granted.

Commercial Credit also moves for summary judgment on Count IV. Plaintiff alleges that Commercial Credit, as the assignee of Security Pacific, is subject to the same usury and statutory licensure claims as Security Pacific. The Court has concluded that Security Pacific has no liability. The same analysis applies to Commercial Credit. Its motion for summary judgment on Count IV is granted.

### VII. *Count V*

In Count V, plaintiff again asserts her allegations in Counts I–IV, recasting them in order to designate plaintiff as a representative for a putative class of persons similarly situated. *See* Fed.R.Civ.P. 23. The Court has rejected each of plaintiff's claims alleged in Counts I–IV. The Court, therefore, declines to certify a class action as requested in Count V. The Court grants each of the defendants' motions for summary judgment as to Count V.

### VIII. *Conclusion*

For the reasons stated above, and based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Southview Chevrolet's motion for summary judgment is granted.

2. Eastern Heights' motion for summary judgment is granted.

3. Security Pacific's motion for summary judgment is granted.

4. Commercial Credit's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

6. Ms. Kinzel had an unsecured, signature loan. Counsel for the plaintiff acknowledged at oral argument that while an automobile purchase down payment may have been the stated reason for the loan, the funds were unencumbered when placed in the plaintiff's hands. She could have invested the funds, visited a casino, or done anything else she wished with the Security Pacific loan.