The CROW TRIBE OF INDIANS,
Plaintiff–Appellant,

and

United States of America,
Plaintiff–Intervenor,

v.

STATE OF MONTANA, Director, Ken Nordtvedt; County of Big Horn; Treasurer, Big Horn County, Martha Fletcher, Defendants–Appellees.

The CROW TRIBE OF INDIANS,
Plaintiff,

and

United States of America, Plaintiff–Intervenor–Appellant,

v.

STATE OF MONTANA, Director, Ken Nordtvedt; County of Big Horn; Treasurer, Big Horn County, Martha Fletcher, Defendants–Appellees.

Nos. 95–35093, 95–35096.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1996.

Decided Aug. 6, 1996.

William C. Hugenberg and Robert S. Pelcyger, Fredericks, Pelcyger, Hester & White, Boulder, Colorado, for plaintiff-appellant.

Clay R. Smith, Assistant Attorney General, Helena, Montana, for defendants-appellees.

Elizabeth Ann Peterson, United States Department of Justice, Washington, D.C., for plaintiff-intervenor-appellant.

Before: BROWNING, WRIGHT, and CANBY, Circuit Judges.

PER CURIAM:

In 1975, Montana imposed severance and gross proceeds taxes on coal produced from Crow Tribe coal deposits. Mont.Code Ann. §§ 15–35–101 through 205; §§ 15–23–701 through 703. The Tribe, and the United States as its trustee,[1] instituted suit challenging Montana's taxes on preemption and Tribal sovereignty grounds. We held the complaint stated a cause of action. *Crow Tribe of Indians v. State of Montana*, 650 F.2d 1104 (9th Cir.1981), *as amended*, 665 F.2d 1390 (9th Cir.1982) (*"Crow I "*). After trial, we held the Tribe had established both that the taxes impermissibly eroded the Tribe's sovereign authority and that they interfered with the policy of promoting tribal self-government and economic development underlying the Indian Mineral Leasing Act of 1938, 25 U.S.C. § 396a–g, were not narrowly tailored to achieve Montana's legitimate interests, and were therefore preempted by the federal statute. *Crow Tribe of Indians v. State of Montana*, 819 F.2d 895 (9th Cir. 1987), *aff'd without opinion*, 484 U.S. 997, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988) (*"Crow II "*).

After *Crow II*, the district court awarded the Tribe over $23,000,000 in severance taxes that the Tribe's coal lessee, Westmoreland Resources, Inc., had paid into the court's registry after 1982. The Tribe then sought restitution of all monies paid to the State and County under the unlawful taxes since 1975—approximately $46,000,000 of severance taxes and $11,000,000 of gross proceeds taxes—on the theory that Montana had been unjustly enriched at the Tribe's expense. The Tribe also sought damages for interference with the Tribe's contractual relations with another lessee, Shell Oil Company. The district court denied the defendant's motion to dismiss the claim for restitution and certified the order for interlocutory appeal. After initially granting leave to appeal, we held that leave was improvidently granted and dismissed the appeal on the ground that the State's contention in opposition to the Tribe's request for relief—that "there must be, if not privity, then a duty *inter sese* between the

interests of the Crow Tribe and the money collected from a third person by Montana's void tax"—had already been resolved against the State by *Crow II*. *Crow Tribe of Indians v. State of Montana*, 969 F.2d 848, 848 (9th Cir.1992) (*"Crow III "*). After trial, the district court denied relief, weighing the equities and determining that the Tribe was not entitled to restitution under theories of assumpsit or constructive trust or to damages for interference with contract.

## I. Restitution

■ The district court's thoughtful discussion reflects the care with which it addressed the issue of restitution. Nonetheless, the court failed to give appropriate weight to the law of this case as established in the three prior appeals. In the process of weighing the equities in favor of and against restitution, the district court in effect reconsidered questions of law already decided by this Court in the prior appeals. Nearly every factor relied upon by the district court to determine that the Tribe was not entitled to relief is either contradicted or made irrelevant by our earlier holdings.

### A.

■ The district court found that lack of privity between the Tribe and Westmoreland and Westmoreland's failure to pursue its own remedies against the State militated against relief, and that the fact that Westmoreland, rather than the Tribe, paid the taxes "[had] its place in determining restitution damages." However, we held in *Crow III* that the Tribe stated a claim for equitable relief despite the absence of traditional requirements for relief under theories of assumpsit or constructive trust; that is, even though there was no privity and even though the Tribe itself had not paid the taxes to the State. *Crow III*, 969 F.2d at 848–49; *see also Crow II*, 819 F.2d at 899; *cf. FDIC v. British–American Corp.*, 755 F.Supp. 1314, 1324 (E.D.N.C.1991) (to recover for unjust enrichment plaintiff must show plaintiff conferred benefit on defendant).[2] By denying relief in part because

---

1. Subsequent references to the Tribe include the trustee.

2. Montana's arguments to the contrary are similarly precluded by *Crow III*. The requirements

of lack of privity and the fact that Westmoreland and not the Tribe had paid the taxes, the district court in effect reinstated the privity requirement we had already rejected in *Crow III* and ignored the law of the case.

### B.

■ The district court failed to follow our earlier holdings when it considered whether the State acted with wrongful intent. The court weighed in Montana's favor the fact that similar taxes are not always preempted, *see Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 176, 109 S.Ct. 1698, 1707–08, 104 L.Ed.2d 209 (1989), and that the Montana taxes had withstood a Commerce Clause challenge, *see Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981), presumably as indications that Montana could not have known the taxes it imposed on the severance and sale of the Tribe's coal were unlawful. Yet the court ignored direct evidence that the Montana legislature was aware that the taxes were potentially preempted and expected "court decreed settlements" would be required to resolve their legality.[3] The court concluded the record did not support a conclusion that the taxes "were levied with an unlawful purpose," although we had already found the coal taxes were intentionally and illegitimately levied to appropriate most of the economic rent from Tribal coal on the ceded strip. *Crow I*, 650 F.2d at 1113, 1114.

■ The district court intimated that the taxes were not wrongful at all, since the severance tax withstood a Commerce Clause challenge in *Commonwealth Edison;* the district court found "the principles of *Commonwealth Edison* … relevant, although not determinative," even though we had noted in *Crow I* that the preemption inquiry raises "[c]ompletely different considerations" from those involved in *Commonwealth Edison. Crow I*, 665 F.2d at 1391. Whether or not the tax discriminates against interstate commerce is hardly relevant to the State's culpability for imposing a tax that impinges on Tribal sovereignty and is preempted by federal law.

### C.

■ The court improperly minimized the weight to be given the Tribe's interest in raising revenue from its mineral resources. We had stated in *Crow II* that "[c]oal production is vital to the economic development of the Crow Tribe [and] … generate[s] funds for essential Tribal service[s]," 819 F.2d at 901 (quotation omitted), and noted that the Tribe's interest in coal tax revenue was particularly significant in view of the federal interest in Tribal economic development and self sufficiency. *Id.* at 898.

The district court relied on the fact that Montana provided general government services to the Tribe as a factor weighing against restitution, but we had held in *Crow II* that the only legitimate State interest that could justify taxes on Crow coal was the provision of *coal related* services. *Id.* at 901–902. Moreover, provision of general services could not offset the Tribe's revenue loss because the district court found the State would have provided such services even if the Tribal coal had not been mined.

Even provision of coal-related services should not weigh against restitution in this case since there was uncontroverted evidence that coal-related taxes other than the severance and gross proceeds taxes generated far more income for Montana than Montana spent to support coal mining. Thus, even without the severance and gross proceeds

---

for equitable relief set out in *United States v. California*, 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) are inapplicable. In that case, California could only be liable if it were somehow responsible for the wrongful act of a third party and there was no finding that California had wrongfully or illegally collected taxes. In this case, however, the illegality of Montana's taxes was established in *Crow I* and *Crow II;* Montana need not be held responsible for another party's wrongdoing for liability to attach.

**3.** Despite this foreknowledge, Montana did not place the contested taxes in escrow until well after this suit was underway or take other steps to mitigate any hardship it might face if the taxes were held invalid. *Cf. McKesson Corp. v. Florida Alcohol and Tobacco Div.*, 496 U.S. 18, 45, 110 S.Ct. 2238, 2254–55, 110 L.Ed.2d 17 (1990).

taxes, Montana did not suffer financially because Crow coal was mined. *See id.* at 901.

### D.

■ The district court denied restitution in part because the Tribe could not show it would have collected taxes from Westmoreland if Montana had not taxed the coal. But we had held in *Crow II* that the Tribe was harmed by the State's enrichment whether or not the Tribe could have imposed its own taxes, because the taxes imposed by Montana had an adverse impact on the Tribe's ability to market its coal, increased the costs of coal production, and reduced the royalty the Tribe could charge, "taking revenue that would otherwise go towards supporting the Tribe and its programs." *Id.* at 899–900, 902–03.

The district court reasoned that Westmoreland would not have paid the taxes to the Tribe from 1975–1982 because the Department of the Interior had not approved the tribal tax. The court had earlier found that Westmoreland would have paid the tribal tax even without approval because it agreed to do so in its 1982 lease. However, Westmoreland was willing to pay coal taxes to the Tribe as early as 1976, so there was no reason for the court to distinguish between the taxes collected before and after 1982.

### E.

We conclude denial of equitable relief was an abuse of discretion. Nearly all of the equitable considerations advanced in support of the retention of the unlawful taxes by the State were rejected explicitly or rendered irrelevant by this court's previous decisions. The equities in favor of restoring improperly collected revenues to the entity entitled to receive them are strong. Montana levied the unlawful taxes with the illegitimate intent of appropriating most of the economic rent from the Tribe's coal and the State benefitted from its wrong. The legitimate claim of

the State on profits from the Tribe's coal is minimal and the Tribe's interest is strong.

We remand for entry of an order directing the State and County to disgorge the improperly collected taxes. The court should also consider the plaintiffs' unresolved request for prejudgment interest.

### II. Interference with Contract

■ We held in *Crow II* that Montana's coal taxes "impair[ed] the tribe's ability to negotiate leases with Shell Oil and other coal companies." *Crow II,* 819 F.2d at 903; *see also Cotton Petroleum,* 490 U.S. at 186–87 n. 17, 109 S.Ct. at 1713 n. 17. On remand, the Tribe sought restitution of monies lost as a result of the State's interference with the Tribe's lease negotiations with Shell. The Tribe alleged the high taxes imposed by the State on the sale and severance of the Tribe's coal made it impossible for the Tribe to renegotiate its 1972 lease with Shell and Shell's would-be customers purchased their requirements from other sources which paid severance and gross proceeds taxes to Montana. The Tribe asked the court to declare a constructive trust on taxes collected by Montana on sales of coal to the lost Shell customers, an amount exceeding $250,000,000. The district court considered the Tribe's claim but rejected it.

The district court did not err. Whether the Tribe's claim is viewed as a state law tort or a request for equitable relief, the Tribe must show that Montana's taxes on the Tribe's coal caused the breakdown in the Tribe's relationship with Shell.[4] The district court found that although taxes may have impaired the Tribe's ability to lease its coal, they were only one factor in the failure of lease negotiations, and other factors were clearly more influential: the Tribe itself repudiated Shell's 1972 lease before the state taxes were imposed, and in 1976 the Tribe successfully sued to invalidate the lease on the ground that the Department of Interior had approved it without making certain find-

---

4. The Tribe's argument that Montana should bear the burden of proving that the unlawful taxes did *not* cause the harm is unpersuasive. The Supreme Court's statement in *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946), that the "wrongdoer shall bear the risk of the uncertainty which his own wrong has created" applies only to proof of the amount of damages, and does not dispense with the requirement that the plaintiff establish causation. The Tribe has offered no reason to extend to this area the Supreme Court's analysis of proof of causation in securities cases, set out in *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 381–85, 90 S.Ct. 616, 620–22, 24 L.Ed.2d 593 (1970).

ings required by law. Other evidence showed that Shell officials were concerned about internal conflicts among the Tribe's leaders and disputes as to who had authority to represent the Tribe in negotiations with Shell. The district court properly concluded the Tribe failed to show the Montana taxes caused the Tribe to lose its lease with Shell.

### III.

Whether the Tribe is entitled to attorney's fees under 42 U.S.C. § 1988 as the prevailing party in *Crow II* is not before us. The Tribe raised the issue but the district court did not reach it.

REVERSED and REMANDED.