UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 97-31226

STEFANIE RIVIERE, ET AL.,

Plaintiffs,

STEFANIE RIVIERE; THOMAS STURDEVANT,

Plaintiffs-Appellants;

versus

BANNER CHEVROLET, INC., ET AL.,

Defendants,

BANNER CHEVROLET, INC.,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

August 6, 1999

Before JONES, DUHÉ, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this appeal concerning the Truth in Lending Act, the defendant/appellee automobile dealer from whom Appellants purchased a vehicle having prevailed in a bench trial on the basis that the dealer is *not* a "creditor" within the meaning of the Act, that issue and whether the transaction was a "consumer transaction" for purposes of the Act are the primary matters at hand. We **VACATE** and **REMAND** for further proceedings.

I.

In December 1994, Thomas Sturdevant and his wife, Stefanie Riviere, (Appellants) purchased a white pickup truck from Banner Chevrolet. After that truck was damaged in September 1995, Appellants returned it to Banner for repairs. By check, their insurer paid approximately $2,100 to them and $242 to Banner for the damage/repairs.

Appellants testified that, when they returned to Banner to retrieve the truck in October 1995, it was not completely repaired. Sturdevant then discussed with Frank Tessitore, a Banner salesman, trading in the truck toward the purchase of a new one. Appellants did so on 13 October 1995, purchasing a new gold pickup.

The purchase was a credit transaction. Banner completed the form "Retail Instalment Contract", identifying Banner as the "Vendor/Creditor" and containing a section captioned "Federal Truth-In-Lending Disclosures", in which, among other things, Banner stated the "finance charge" and "amount financed". The contract provided that Banner assigned its interest to General Motors Acceptance Corporation (GMAC).

In conjunction with the purchase, Tessitore had the white truck appraised and offered Sturdevant $10,000 on the trade-in. Sturdevant refused. Following a second appraisal, Tessitore offered to value it at $12,000. Sturdevant accepted; but, he testified that he understood the appraisal to represent the value

- 2 -

of the truck in its still-damaged condition.  Tessitore testified that the white truck was fully repaired; that the appraisal represented its value in that condition.

During the sales transaction, Sturdevant was in possession of the $2100 insurance check.  Tessitore testified that he told Sturdevant to give the check to the body shop manager as payment for the work on the white truck; and that Sturdevant assured him that he would.  However, Appellants kept the check.

Accordingly, the day after Appellants took possession of the gold truck, Tessitore asked Sturdevant for the insurance check.  Sturdevant refused.  (Banner subsequently obtained a state court judgment against Appellants for the amount due for the repairs.)

Approximately two weeks later, Appellants refinanced the purchase.  As discussed *infra*, they maintain that, prior to refinancing, the new truck was used solely for consumer, *not* business, purposes.

In November 1995, Appellants filed this action, claiming that Banner had violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq*.[1]  Following a bench trial, the district court ruled in

---

[1]  Appellants also presented claims against Banner's attorneys under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, based on a demand letter to Appellants from Banner's attorneys. These claims were dismissed following Appellants' presentation of evidence at trial.  No appeal was taken from that dismissal.

favor of Banner, on the basis that it was not a "creditor" within the meaning of TILA.[2]

## II.

Factual findings are reviewed for clear error; questions of law, *de novo*. *E.g.*, **Bridges v. City of Bossier**, 92 F.3d 329, 332 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997). Appellants maintain that Banner is a TILA "creditor"; that the sale of the gold truck was a consumer transaction; and that Banner violated TILA. (For purposes of this opinion, we need not describe the two claimed violations.)

## A.

Enacted to ensure the "informed use of credit results [through] an awareness of the cost thereof by consumers", TILA attempts to achieve this goal by mandating "a meaningful disclosure of credit terms". 15 U.S.C. § 1601(a). *See also* **Fairley v. Turan-Foley Imports, Inc.**, 65 F.3d 475, 479 (5th Cir. 1995) ("purpose of

---

[2]A prior panel affirmed. Appellants then sought rehearing en banc. Amicus briefs urging the court to reconsider its decision with regard to the creditor issue were filed by the Commercial Law League of America, the National Association of Consumer Advocates, the National Consumer Law Center, the American Bankers Association, the Consumer Bankers Association, the American Financial Services Association, and the Louisiana Bankers Association. The prior panel granted rehearing and vacated its opinion. *See* **Riviere v. Banner Chevrolet, Inc.**, 158 F.3d 335 (5th Cir. 1998), *vacated*, 166 F.3d 727 (5th Cir. 1998).

TILA is to protect the consumer from inaccurate and unfair credit practices").

In the light of TILA's purpose and the fact that, among other functions related to being a traditional creditor, Banner completed the form retail installment contract, including the TILA disclosures and identifying itself as the "Vendor/Creditor", it should follow that Banner is the TILA "creditor". But, of course, we must look to TILA to make that determination. Along this line, Appellants contend that the district court, in holding that Banner was *not* a TILA "creditor", erred in its interpretation of TILA and the applicable regulation and by rejecting the official Federal Reserve Board (FRB) commentary. We agree.

Prior to the enactment of the Truth in Lending Simplification and Reform Act, Pub. L. No. 96-221, 94 Stat. 132, 168 (1980) (TILSRA), the TILA definition of "creditor" distinguished between "creditors" and "credit arrangers", defining a "creditor" as one "who regularly extend[s], or arrange[s] for the extension of, credit". 15 U.S.C. § 1602(f)(1980) (subsequently amended by TILSRA); *see also* 12 C.F.R. § 226.2(s)(1980) (pre-TILSRA regulatory definition of "creditor"). Applying this former definition, the Supreme Court held that an automobile dealer was a TILA "credit arranger" because it merely arranged for credit with a finance company which, in turn, became the immediate assignee of the

underlying contract. *See Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 157-58 (1981)(per curiam). The Court acknowledged that both the dealer and the finance company fit within the pre-TILSRA definition of "creditor", with the finance company's role in the transaction similar to that of a traditional creditor. *Id.*

In response to *Cenance*, Congress enacted TILSRA (effective in 1982) and amended the definition of "creditor". As a result, TILA presently defines a "creditor" as

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). The legislative history of TILSRA reflects that Congress sought to simplify the definition of "creditor". *See* S. Rep. No. 96-73, 1979 WL 10376 at *15 (1979) (TILSRA simplified definition of "creditor" to "eliminate confusion under the current act as to the responsibilities of assignees and 'arrangers of credit'").

When it enacted TILA, Congress "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal

- 6 -

framework governing commerce in credit". **Fairley**, 65 F.3d at 479

(quoting **Ford Motor Credit Co. v. Milhollin**, 444 U.S. 555, 559-60

(1980)). To implement TILA, the FRB promulgated "Regulation Z",

located at 12 C.F.R. § 226. *See* **id.** Regulation Z defines a

"creditor" as "[a] person (A) who regularly extends consumer credit

..., and (B) to whom the obligation is initially payable, either on

the face of the note or contract, or by agreement when there is no

note or contract". 12 C.F.R. § 226.2(a)(17)(i). Regulation Z also

contains an official FRB staff interpretation regarding the

distinction between "creditors" and "assignees":

> If an obligation is initially payable to one
> person, that person is the creditor *even if
> the obligation by its terms is simultaneously
> assigned to another person*. For example:
> *An auto dealer and a bank have a business
> relationship in which the bank supplies the
> dealer with credit sale contracts that are
> initially made payable to the dealer and
> provide for immediate assignment of the
> obligation to the bank. The dealer and
> purchaser execute the contract only after the
> bank approves the creditworthiness of the
> purchaser. Because the obligation is
> initially payable on its face to the dealer,
> the dealer is the only creditor in the
> transaction.

12 C.F.R. pt. 226, supp. I, subpt. A, cmt. 2(a)(17)(i)(2) (emphasis

added).

The district court concluded that Banner was *not* a TILA

"creditor" for two reasons: it was *not* an extender of credit

because, although its credit department investigates credit histories and prepares forms, it is ultimately GMAC or other entities to which Banner subsequently assigns a loan that actually make the loan and thereby extend the credit; and, according to the district court, the obligation was *not* initially payable to Banner. Accordingly, the court also found that Regulation Z was *not* applicable to Banner. *See* 12 C.F.R. § 226.2(a)(17)(i) (defining creditor as one "to whom the obligation is initially payable"). In so deciding, the district court rejected the FRB staff interpretation of "creditor".

In *Green v. Levis Motors, Inc.*, 1999 WL 414224, *1 (5th Cir. 1999), an automobile dealer executed a retail installment contract, which included TILA disclosures, and assigned the contract to Hancock Bank. (It is not clear whether the assignment was simultaneous.) The purchasers sued the dealer and Hancock. Without addressing the applicability of TILA to the dealer, our court treated it as a TILA "creditor" and held that it had committed TILA violations. *Id.* at *7-8. Hancock was treated as an assignee. *Id.* at *8.

In *Green*, our court did not explicitly address the issue before us. But, its disposition could only be reached by treating

the automobile dealer as a TILA "creditor".[3]  *See also* **Ellis v. General Motors Acceptance Corp.**, 160 F.3d 703, 705-08 (11th Cir. 1998) (treating GMAC as assignee, *even though contract was simultaneously assigned to it by automobile dealer*); **Taylor v. Quality Hyundai, Inc.**, 150 F.3d 689 (7th Cir. 1998), *cert. denied*, 119 S. Ct. 1032 (1999) (treating automobile dealer as "creditor" and financing companies as assignees).

In this regard, the district court erred by rejecting the FRB staff commentary.  In **Milhollin**, 444 U.S. at 565-66, the Supreme Court stated that, "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing [TILA or Regulation Z] should be dispositive".  The staff interpretation is not demonstrably irrational.  *See* **Kinzel v. Southview Chevrolet Co.**, 892 F. Supp. 1211, 1216 (D. Minn. 1995) (staff interpretation of "creditor" is rational, "as it simply restates the congressional intent to eliminate an ambiguity in the statute prior to October, 1982").

---

[3]Regarding a similarly structured transaction, several other district courts have found that an automobile dealer, such as Banner, was a "creditor" under TILA.  *See* **Baldwin v. Laurel Ford Lincoln-Mercury, Inc.**, 32 F. Supp. 2d 894, 904 (S.D. Miss. 1998); **Kinzel v. Southview Chevrolet Co.**, 892 F. Supp. 1211, 1216 (D. Minn. 1995); **Frazee v. Seaview Toyota Pontiac, Inc.**, 695 F. Supp. 1406, 1408 (D. Conn. 1988).  *But see* **Augustine v. Ray Brandt Nissan, Inc.**, 1993 WL 557680, *1 (1993) (automobile dealer not a "creditor" because it was not the entity that actually provided the funds).

As noted *supra* and by the district court, Banner identified itself in the form retail installment contract as the "Vendor/Creditor". In the light of this, viewing the contract as a whole, and applying the FRB staff interpretation, the obligation was initially payable to Banner, even though it was assigned to GMAC. *See* 12 C.F.R. § 226, supp. I, subpt. A, cmt. 2(a)(17)(i)(2) (even where obligation is simultaneously assigned to another, automobile dealer is "creditor" if obligation is "initially payable on its face" to automobile dealer). The staff interpretation also makes it clear that, although Banner simultaneously assigned the loan to GMAC, it still "extended credit" as a "creditor" under TILA. *Id*.

## B.

As a second basis for TILA not being applicable, Banner maintains, as it did in district court, that the sale of the gold truck was a business, not a consumer, transaction. TILA exempts "transactions involving extensions of credit primarily for business, commercial, or agricultural purposes". 15 U.S.C. § 1603(1); *see also* **Poe v. First National Bank of DeKalb County**, 597 F.2d 895, 896 (5th Cir. 1979). Further, TILA states that it covers "consumer" credit transactions, defined as those "in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the

transaction are primarily for personal, family, or household purposes". 15 U.S.C. § 1602(h).

Therefore, "[w]e must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this transaction was primarily consumer or commercial in nature". *Tower v. Moss*, 625 F.2d 1161, 1165 (5th Cir. 1980). At trial, Banner maintained that Sturdevant intended to use the gold truck for his construction business. In support, it introduced Sturdevant's 1995 business tax return, which claimed a deduction for 100% of the use of the white truck and for 70% of the use of the gold truck. Further, Tessitore testified that Sturdevant removed his tool box (as noted, he worked in construction) and mat (used to protect the truck bed) from the white truck and placed them in the gold truck; and that, in his experience, the mat is used to protect vehicles used for work.

Banner asserts that, in the light of this, it follows that Sturdevant purchased the gold truck for his business. But, Sturdevant testified that he *never* used it for his business in 1995.

And, when questioned regarding the 1995 tax return, he claimed that his tax preparer took the deduction without his knowledge. He also testified that he did not use the gold truck for business during the two week interval between its purchase and its

- 11 -

refinancing.  Riviere testified that, during those two weeks, she used the truck for transportation to her place of work.  Further, all documents executed in connection with the sale of the gold truck indicate that it was a consumer transaction.  Finally, the title and loan documents were drafted in Riviere's name. (Sturdevant testified that her name was used because of his poor credit.)

Obviously, the evidence is conflicting.  That the documents relevant to this transaction label it as "consumer" is not dispositive.  The few cases that address this issue look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.  *See* **Tower**, 625 F.2d at 1166-67 (although loan money used to repair house subsequently leased to third party, loan primarily personal in nature because evidence established that borrower intended to reside in house during retirement and lessee functioned primarily as caretaker); **Henson v. Columbus Bank and Trust Co.**, 651 F.2d 320, 326-27 (5th Cir. 1981) (loan not personal investment loan where borrower invested in company of which he was holder of one-fifth stock, director, guarantor of debts, corporate secretary, and legal counsel); **Poe**, 597 F.2d at 896 (loan primarily for business even though stockholder and wife were required to co-sign and pledge their family home as security); **Bloom v. I.C. System, Inc.**, 972

- 12 -

F.2d 1067, 1069 (9th Cir. 1992) (loan not primarily personal in nature where borrower used money to invest in company of which he was president).

In short, resolution of this issue involves a factual determination of Appellants' purpose in purchasing the gold truck, which hinges on Sturdevant's credibility. Although the district court discussed the evidence regarding this issue, it did *not* make factual findings regarding the purpose  for the purchase.  Of course, we may, in our discretion, resolve this issue for the first time on appeal.  *See* **Green**, 1999 WL 414224 at *6 (citing **Singleton v. Wulff**, 428 U.S. 106, 120-21 (1976)).

But, cutting against our doing so is, *inter alia*, the district court's noting that, had it proceeded to the merits of the TILA claims, it would have credited Tessitore's testimony that the repairs to the white truck constituted a separate transaction from the sale of the gold truck.  In so doing, the court rejected Sturdevant's version.  Because the court apparently found at least one portion of Sturdevant's testimony to lack credibility, we are reluctant to decide the consumer transaction issue, which, as noted, turns primarily on his credibility.

The better course is to remand to the district court for findings of fact.  Obviously, should it find a consumer transaction, it should then rule on the claimed TILA violations.

III.

For the foregoing reasons, the judgment is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.

*VACATED and REMANDED*