Revised January 22, 2002

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01-30237
SUMMARY CALENDAR

ROBERT J. SAPIA, JR.,

Plaintiff-Appellant,

v.

REGENCY MOTORS OF METAIRIE, INC.,
DOING BUSINESS AS
REGENCY FORD: LEGION INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

January 9, 2002

Before REYNALDO G. GARZA, SMITH, and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

On September 15, 1999, Robert Sapia went to Regency Motors of Metairie ("Regency"), Louisiana to shop for a new pickup truck. At the time, Sapia was driving a 1998 Nissan that he wished to trade in. He informed the salesperson assisting him, Milan Dediol, that he wanted to buy a truck with no money down. The Nissan, however, provided no net trade in allowance, meaning that it was not worth more than Sapia owed. Sapia nevertheless found a truck to his

liking and negotiated a price with Dediol.  He then signed papers authorizing Regency to check his credit to determine which financial institution would most likely extend him credit.

Sapia then met with the finance manager of Regency, Wendy Ortiz, who explained each of the documents presented to Sapia to sign.  Sapia signed each of the following documents: Truth-in-Lending Disclosure Statement and Security Agreement, Addendum to Purchase Agreement, Dealership Loaner Agreement, New Vehicle Retail Buyers Order, Ford Application Statement, Limited Power of Attorney, Louisiana Department Power of Attorney, Bank One Credit Application, AutoGap, Regency Variance Payoff, Louisiana Department of Public Safety Owner Transfer, Vehicle Application, Odometer Statement-Nissan, Odometer Statement-Ford, and a We Owe form.

The Truth-in-Lending Statement and Security Agreement stated that "I have entered into a credit sale with you to finance the purchase of the following described motor vehicle" and contained a promise by Sapia to pay the principle amount of $22,021.26 along with interest at the specified rate.

Sapia also signed an "Addendum to Purchase Agreement" that stated the sales installment contract would be assigned to a financial institution and that in the event Regency was unable to assign the contract within seven days, the Retail Sales contract would be void.  The addendum clearly provided that:

> should Regency be unable to obtain financing within seven days of date hereof *prospective* purchaser shall return the vehicle to Regency by the end of the seventh day or within forty-eight hours of notification by Regency that financing cannot be obtained, which ever occurs earlier. Thereafter *prospective* purchaser will be without authority to further use the vehicle and acknowledges and agrees that law enforcement authorities may be called.

2

Joint Trial Exh. 2.

An employee in the finance office directed Sapia to sign a Bank One-Harahan Credit Application because she felt it was the most likely to approve Sapia. Bank One did not approve Sapia, and on the following day, September 16th, Bank One sent a fax to Regency that listed the bases for the denial as excessive inquiries and insufficient equity and noted that credit might be extended for an "auto similar to trade."

Dediol was then directed to have Sapia return to the dealership to restructure the transaction to include a down payment in the hope of obtaining financing. Sapia was unavailable. Despite an understanding that the contract was contingent upon Regency finding financing within seven days, Sapia left the country, unannounced, on business. Because it appeared that Sapia might not return until well after the expiration of the seven day window, Regency attempted to have the loan approved by AmeriCredit Financial. AmeriCredit refused to approve Sapia and sent a decision notification to him indicating such. Over the next several days, Stephen Lombardo of Regency attempted to secure financing with multiple lending insitutions, but none would finance Sapia on account of his bad credit.

Every time a bank or lender denies credit, it is required to send out an adverse action letter explaining to the rejected consumer the reasons behind the denial. Sapia acknowledged receiving adverse action letters from Bank One, Ford Motor Credit, Chase Manhattan Bank, and Hibernia National Bank. Each letter included a telephone number that Sapia could call to hear the reasons for the denial of credit.

After repeated attempts to secure financing, it became necessary for Regency to take possession of the truck pursuant to the Addendum to Purchase Agreement. Unbeknownst to

3

Regency, however, Sapia, had left for Mexico. He left the truck with his parents. Regency, which still owned the truck, merely asked Sapia's father, in whom the truck had apparently been entrusted while Sapia was away, to return it to the dealership. Sapia's father complied with the request.

This court reviews a grant of summary judgment de novo and does not give deference to the trial court. See McDaniel v. Anheiser-Busch, Inc., 987 F.2d 298, 301 91993). This court must "review the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party." Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." McDaniel, 987 F.2d at 301 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate when there is no genuine issue of material fact and only a question of law is presented.

I.

Sapia alleges that summary judgment dismissing his conversion claim was improper. Actionable conversion, as defined by the Louisiana Supreme Court, consists:

> of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion...[I]t is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act.

Importsales, Inc. v. Lindeman, 92 So.2d 574, 574-76 (1957). Sapia argues that Regency converted his property by repossessing the truck, and although there is neither legal authority

4

cited nor even an explanation of the basis of the conversion claim, a conversion claim could only result is Sapia had possessory rights to the truck.. The truck, however, was not Sapia's property. Nor was the truck seized. Dediol simply requested that Sapia'a parents return the truck when Sapia could not be located. The Addendum to Purchase Agreement made it explicitly clear that Regency maintained an ownership interest in the truck pending finance approval. This agreement stated in no uncertain terms that if Regency was unable to assign the contract within seven says, the Retail Installment Sales Contract would be void.

Because the truck was still the property of Regency, the district court properly granted Regency's Motion for Summary Judgment regarding Sapia's conversion claim.

## II.

Sapia's brief alleges that his privacy was invaded because Didiol discussed with Sapia's father Sapia's failure to secure vehicle financing. Sapia fails to cite supporting case law or even assert under which of the four privacy torts Regency is liable. The four categories of the invasion of privacy tort recognized by Louisiana include: 1) misappropriation of a person's name or likeness; 2) intrusion upon physical solitude or seclusion; 3) placing a person in a false light before the public; and 4) unreasonable public disclosure of private facts. See Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1388 (La. 1979). The first three are clearly inapplicable to Sapia's claim, and Sapia has no cause under the fourth.

A privacy violation is actionable in Louisiana only when a defendant's conduct is unreasonable and seriously interferes with a plaintiff's privacy interest. See id. at 1389. Reasonableness is determined after balancing the plaintiff's privacy interest against the

5

defendant's interest in pursuing his course of conduct.

In this case, Regency merely asked Sapia's father to return the truck on his own before Regency exercised its rights to reclaim it itself. Sapia knew full well that he did not yet own the truck and knew of his own checkered credit history, yet he left for Mexico without making any arrangements to have the truck returned to Regency if financing could not be obtained. Regency cannot be said to have acted unreasonably, and the court properly granted Regency's Motion for Summary Judgment on Sapia's invasion of privacy claim.

## III.

Sapia contends that Regency violated the Truth-in-Lending Act by including the creditor's own charges for AutoGap insurance with the amount actually paid to a third person without noting the conflation. Regency contends that it is not a creditor under the Truth-in-Lending Act ("TILA"). Even if it is a creditor, Regency argues that any fee retained by Regency for the AutoGap insurance does not qualify as a finance charge, and that, regardless, it did appropriately disclose the fee to Sapia.

> TILA defines a creditor as
>
> a person who both (1) regularly extends, whether in connection with loans, sales of property or services or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). In Riviere v. Banner Chevrolet, Inc., 184 F.3d 457 (5th Cir. 1999), we reversed a trial court decision holding that an automobile dealership was not a creditor. There,

6

we noted that if "an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person." Id. at 460.

Regency maintains that, even if TILA does apply, the fee was appropriately disclosed to Sapia. TILA's stated purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer agent against inaccurate and unfair billing and credit card practices. 15 U.S.C. § 1601(a).

Here, Sapia signed a GAP agreement at the time of the sales negotiations. In addition, the Truth-in-Lending Disclosure Statement, signed by Sapia as well, also included the GAP insurance. Furthermore, the Addendum to Purchase Agreement made clear that the vehicle would have to be returned if financing could not be obtained. Consequently, Sapia has no grounds to argue that proper disclosure was not made to him, and summary judgment for Regency on this count was proper.

IV.

Sapia has presented no evidence of actual damages arising from Regency's conduct. Sapia received adverse action letters from Bank One, Hibernia, Chase Manhattan, and Ford Motor Credit. Regency's duty to send out an adverse action letter could only arise if a lender it contacted failed to do so. AmeriCredit was the only lender from whom Sapia denied receiving an adverse action letter. Sapia, however, could have learned no additional information from a fifth or sixth adverse action letter. Moreover, failure to issue an adverse action letter when the adverse action letter was prompted by an accurate report precludes the possibility that there was anything

7

Sapia could remedy in order to obtain financing. Thus, no damages can be said to have occurred.

Even with no actual damages, we have allowed recovery for humiliation and mental distress and for injury to one's reputation and creditworthiness. See Fischl v. General Motors Acceptance Corporation, 708 F.3d 143, 151 (5th Cir. 1983). Even if such damages are found, the conduct must still warrant recovery of punitive damages.

To collect punitive damages under the Fair Credit Reporting Act, Sapia must show that Regency willfully failed to comply with one of the Act's requirements.[1] For the violation to be "willful," thereby justifying an award of punitive damages under the Fair Credit Reporting Act, a defendant's course of conduct must exhibit a "conscious disregard" for or entail "deliberate and purposeful" actions taken against a plaintiff's rights. Cousin v/ Trans Union Corporation, 246 F.3d 359, 372 (5th Cir. 2001). Sapia states that "it goes without citing authority that Summary Judgment is not the proper vehicle to obtain evidence on intention." Brief for Appellant, 41. Sapia, however, cites no authority whatsoever in arguing that summary judgment dismissing a claim for punitive damages was improper. Sapia's argument that "willful" envelops all acts committed in violation of the law because a party is "imputed to know the law" is unfounded, incorrect, and, if applied generally, would allow punitive damages for all claims. Furthermore, Sapia presents no evidence whatsoever that Regency acted in conscious disregard of his rights. The district court's granting of Regency's Motion for Summary Judgment on the issue of punitive damages was therefore proper.

---

[1] Specifically, the Act states that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of...such amount of punitive damages as the court may allow." 15 U.S.C.A. § 1682n.

V.

Sapia contends that the trial court mistakenly indicated that it had included the entire Fair Credit Reporting Act in its charge to the jury. Sapia also contends that the trial court left out another section of the act that Sapia's counsel had included. When the trial court began reviewing the jury instructions, Sapia's counsel had not yet finished reading through them. Nonetheless, he chose to try and follow along as best he could. Despite opportunities to lodge objections, Sapia's counsel did not do so in either instance. When the party challenging a jury instruction does not properly object as required by Rule 51 of the Federal Rules of Civil Procedure,[2] this Court applies the plain error standard of review. See Russell v. Plano Bank & Trust, 130 F.3d 715, 721 (5th Cir. 1997).

In determining whether Regency violated the Fair Credit Reporting Act, the jury was first required to determine whether Regency committed adverse action against Sapia. Prior to finding that no adverse action was taken against Sapia by Regency, the charge instructed the jury on the definition of adverse action, the purpose of the Fair Credit Reporting Act, the requirements of consumer reports, and the civil liability for negligence noncompliance. We cannot say that the instructions in this case amount to plain error.

The judgment of the district court is AFFIRMED.

---

[2] Rule 51 states that "[N]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for objection." Fed. R. Civ. P. 51.